IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SANDREANO GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF HARVEY, MAYOR OF HARVEY | ) | |
| ERIC J. KELLOGG, HARVEY POLICE | ) | |
| CHIEF DENARD EAVES, HARVEY POLICE | ) | |
| OFFICER MARCUS PATTERSON, AS-YET | ) | |
| UNKNOWN CITY OF HARVEY POLICE | ) | |
| OFFICERS, LARRY'S LOUNGE, TARINA | ) | |
| WILLIAMS, and AS-YET UNKNOWN | ) | JURY TRIAL DEMANDED |
| EMPLOYEES OF LARRY'S LOUNGE | | |
| | | |
| Defendants. | | |

## COMPLAINT

Plaintiff Sandreano Green, by and through his attorneys, Loevy & Loevy, complains of Defendants City of Harvey, Mayor of Harvey Eric J. Kellogg, Harvey Police Chief Denard Eaves, Harvey Police Officer Marcus Patterson and other as yet unknown officers of the Harvey Police Department (collectively, "Defendant Officers"), Larry's Lounge, Tarina Williams, and as-yet unknown employees of Larry's Lounge, and states as follows:

## Introduction

1. On the evening of Saturday, April 13, 2013, Defendant Officers unlawfully beat Mr. Green, broke both of his legs, refused to provide him with timely medical care, and charged him with false criminal violations to justify their misconduct.

The following photographs accurately depict some of his resulting injuries:

 

2.     Defendant Officers' unlawful conduct is the product of dysfunction in the Harvey Police Department ("HPD"), which has for years permitted its officers to violate citizens' rights with impunity. Despite an unequivocal warning by the United States Department of Justice, adverse jury verdicts, critical audits, and a series of interventions by outside entities, the City of Harvey and its policy-makers have refused to address HPD's deficiencies.

3.     Mr. Green brings this action pursuant to 42 U.S.C. § 1983 to redress his injuries and to end the abuse perpetrated by HPD officers on Harvey residents.

**Jurisdiction and Venue**

4.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367.

2

5.    Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein all occurred within the district, Defendant City of Harvey is a municipal corporation located here, and, on information and belief, all or most of the parties reside in this judicial district.

## Parties

6.    Mr. Green is a 35-year old lifelong resident of Harvey and father of two. He graduated from Thornton High School in Harvey, and went on to take courses at Moraine Valley Community College in Palos Hills, Illinois. Mr. Green has maintained full-time employment since his early 20s and has worked since 2012 as a collections agent with Illinois Collections Services.

7.    Defendant City of Harvey is a municipal corporation under the laws of the State of Illinois.

8.    Defendant Eric J. Kellogg is the Mayor of Harvey and has held that position since 2003.

9.    Defendant Denard Eaves is the Chief of the Harvey Police Department.

10.   Defendant Marcus Patterson is a Harvey Police Officer. At all times relevant to this Complaint, Defendant Patterson and as-yet unknown City of Harvey Police Officers acted under color of law and within the scope of their employment as police officers for the City of Harvey.

11. Defendant Larry's Lounge is a bar located in Harvey, Illinois.

12. Defendant Tarina Williams was, at all times relevant to this Complaint, the owner of Larry's Lounge.

### Factual Allegations

13. Mr. Green spent the morning of Saturday, April 13, 2013 at work. That evening, he and his girlfriend drove to Larry's Lounge, a bar in Harvey.

14. At Larry's Lounge, Mr. Green ordered a drink from owner Tarina Williams and paid for it in cash. Later, he ordered a second drink from Defendant Williams. When she set the drink in front of him, Mr. Green realized that he needed money he had left in the car to pay for it. He so informed her, and stood up to get the money, leaving the drink untouched on the bar. Defendant Williams falsely accused him of trying to steal the drink and summoned a security guard.

15. The security guard escorted Mr. Green to the exit, holding him by the arm. At Mr. Green's request, his girlfriend went to get money while he waited with the security guard for her return.

16. Responding to a call about the incident, the Defendant Officers began to arrive at the bar. The first Defendant Officer to arrive approached Mr. Green and questioned him. Mr. Green

explained that he had not consumed the drink at issue and that his girlfriend had gone to get money to pay for it.

17.  A second Harvey police officer, Defendant Patterson, then arrived. After speaking with Defendant Williams, Patterson ordered Mr. Green to put his hands behind his back, without explanation.

18.  Mr. Green asked whether he was being arrested, and if so, for what crime. Defendant Patterson refused to answer, replying with words to the effect of: "Don't worry about it."

19.  Mr. Green looked back at the first Defendant Officer and then felt a blow that knocked him to the ground. As he lay on the ground, Plaintiff was hit repeatedly by Defendant Patterson and possibly by other Defendant Officers. Unarmed and defenseless, Plaintiff was beaten until he urinated on himself. He felt an agonizing pain in his legs, among other injuries, and called out with words to the effect of: "My legs, my legs!"

20.  When the beating was over, one of the Defendant Officers ordered Plaintiff to get up. Plaintiff was unable to stand and so informed the Defendant Officers. Rather than calling for an ambulance, the Defendant Officers dragged him to a Harvey police car, searched him, and handcuffed him. They then put him in the police car and drove him to a police station. Mr. Green pleaded with the Defendant Officers to provide him with medical care.

5

21.   When Mr. Green arrived at the police station,
Defendant Patterson ordered him to get out of the police car.
Plaintiff was unable to comply because of the injuries to his
legs, so Defendant Patterson dragged Mr. Green into the station
and threw him into a cell. Bloody, bruised, and unable to walk,
Plaintiff continued to plead for medical care, but none was
provided.

22.   When Mr. Green insisted on speaking with a supervisor,
a sergeant arrived and finally agreed to call for an ambulance.
Plaintiff was transported by ambulance to the hospital, where
medical professionals discovered a break in his right leg and
fracture in his left, among other injuries.

23.   The Defendant Officers knew Mr. Green had committed no
crime, and that there was no probable cause to support any
criminal charge, but nevertheless falsely charged him with
battery, resisting arrest, theft of services, and destruction of
property, to justify their misconduct.

24.   The Defendant Officers also falsely charged Plaintiff
with unlawful possession of a gun they claimed to have
discovered on him at the police station, even though Mr. Green
never had a gun. Indeed, no weapons had been discovered on Mr.
Green during two separate searches earlier that night: first, a
routine search by a security guard at the entrance to Larry's
Lounge; and second, a search by the Defendant Officers

themselves of Mr. Green before they placed him in a police car
for transport to the station.

25.   Rather than testifying to the false charges, Defendant
Patterson declined to appear on the date of Mr. Green's trial.
After Mr. Green had spent nearly seven months fighting the
charges against him, the charges were dismissed.

26.   As a result of Defendants' misconduct, Mr. Green
suffered injuries that included two broken legs, other painful
physical injuries, the loss of his job, expensive medical and
legal bills, fear, anxiety, distress, and humiliation.

## Defendant City of Harvey's
## Unconstitutional Policies and Practices

27.   Mr. Green's injuries resulted directly from
longstanding HPD policies and practices that facilitate and
promote excessive force. These policies and practices include
the inadequate hiring, training, discipline, and supervision of
officers and the inadequate reporting, review, and investigation
of use-of-force incidents.

28.   Long before Mr. Green was beaten by HPD officers, the
City of Harvey and its policymakers had clear notice that
citizens would be victimized if they failed to remedy HPD's
deficient policies and practices.

29.   In 2012, the United States Department of Justice
("DOJ") concluded a multi-year investigation into the HPD and

directed a letter specifically at Defendants Kellogg and Eaves voicing "serious concerns regarding the potential for excessive uses of force by HPD officers." Letter from DOJ Civil Rights Division to Harvey Mayor Eric J. Kellogg and Chief Denard Eaves of the Harvey Police Department, Jan. 18, 2012, available at http://www.justice.gov/crt/about/spl/documents/harvey_ findings_1-18-12.pdf. The DOJ found "serious deficiencies in the operation of [HPD] that create an unreasonable risk that constitutional violations will occur," including that:

a. HPD's "system for reporting, reviewing, and investigating use of force is grossly deficient and creates a high risk of excessive force";

b. "HPD is a department devoid of supervisory oversight and accountability, that tacitly endorses heavy-handed uses of force that were likely avoidable";

c. HPD "supervisors continue to sanction or rubber stamp" inadequate reports on use of force incidents;

d. "HPD's failure to insist that its officers thoroughly document each use of force helps to foster an environment in which constitutional violations are more likely";

e. "HPD's failure to provide sufficient guidance, training, and support to its officers, as well as its failure to implement systems to ensure officers are wielding their

authority effectively and safely, have created an environment
that permits and promotes constitutional harm"; and,

f. HPD's "continued failure to collect data and use it
to identify problems and mitigate future risk creates the
opportunity for constitutional violations." *Id.*

30. A series of lawsuits, investigations, and
interventions by outside entities provided additional notice to
the City of Harvey and its policymakers of HPD's
unconstitutional policies and procedures.

31. In 2002, for example, a jury found that HPD officer
Manuel Escalante had shot unarmed nineteen-year-old Archie
Robinson in the back without justification, and that, as in Mr.
Green's case, HPD officers "conspired to plant a gun at a crime
scene" to cover up the misconduct. *Robinson v. City of Harvey*,
489 F.3d 864, 866 (7th Cir. 2007). The jury also found for
Robinson, who was represented in that action by the undersigned
counsel's law firm, on his municipal liability claim, crediting
evidence that HPD so inadequately supervised and disciplined its
officers that it, too, bore responsibility for the shooting. *See
id.*

32. On appeal, the Seventh Circuit cited the verdict as
"one that will presumably help to deter future constitutional
violations by the City's officers" and praised Robinson's
efforts for "exposing to light disturbing police malfeasance and

grave municipal institutional failures." *Id.* at 872. HPD failed to meaningfully discipline Officer Escalante, however, and later promoted him to detective. *See* U.S. Report Criticizes Harvey Police, Finds No Illegal Brutality, Chicago Tribune, 2012 WLNR 7125301 (Apr. 4, 2012).

33. In 2006, Defendant Kellogg ignored a resolution by the Harvey City Council urging him to obtain a formal audit of HPD by the Illinois State Police. *See* Council Approves Resolution Seeking State Audit of Police, Chicago Tribune, 2006 WLNR 12800236 (July 25, 2006); State, County Raid Harvey Police Force, Chicago Tribune, 2007 WLNR 1454325 (Jan. 25, 2007).

34. In 2007, members of the Illinois State Police Public Integrity Unit and the Cook County state's attorney's and sheriff's offices raided the HPD for records related to unsolved violent crimes, on the suspicion that gangs had infiltrated the HPD and stymied their investigation. *See id.* After the raid, the state's attorney's office initiated multiple prosecutions, commenting that "[t]he citizens of Harvey deserve better." *See* Harvey Cops Get Cold-Case Warning, Chicago Tribune, 2007 WLNR 1884581 (Sept. 2007).

35. In 2008, a sting operation by the Federal Bureau of Investigation revealed that HPD officers were taking payments to facilitate drug deals and other crimes, leading to the arrest of

10

fifteen officers. *See* FBI Stages Sting to Snare Corrupt Cops, Chicago Tribune, 2008 WLNR 23287977 (Dec. 3, 2008).

36. In 2011, an independent audit of HPD's aggravated battery and homicide investigators by the Illinois Association of Chiefs of Police found that HPD "has not completed thorough background investigations [of its new hires] for several years" and recommended that HPD develop and implement a comprehensive policy on background investigations for all positions. *See* Report on the Audit of Selected Operations of the Harvey Police Department, Illinois Association of Chiefs of Police, Aug. 15, 2011, at 16-17.

37. A follow-up assessment in December 2012 revealed that HPD had failed to implement such a policy. *See* South Suburban Major Crimes Taskforce, Follow-up Assessment Report of the City of Harvey, Illinois PD, Dec. 14, 2012, at 3-4.

38. Though the City of Harvey and its policymakers had ample notice of HPD's deficiencies prior to Mr. Green's encounter with the Defendant Officers, they implemented no meaningful remedial measures. Indeed, a recent Chicago Tribune investigation confirmed in February 2014 that HPD *continues* to employ "officers whose work records are full of allegations of wrongdoing" in a "breakdown of oversight." Joe Mahr, Matthew Walberg & Joseph Ryan, *In Harvey, Who Polices the Police?*, Chicago Tribune, Feb. 10, 2014.

11

39.   Defendant Marcus Patterson's history of misconduct unfortunately exemplifies the department's breakdown in oversight. *See, e.g.*, *Some Harvey police have controversial records,* Chicago Tribune, Feb. 10, 2014. His record includes the following:

a.   While working for the Bolingbrook police from 1999 to 2002, Patterson received counseling on use of force and arrest tactics, as well as a written reprimand for sexual harassment, after complaints were filed against him. In June 2003, the Bolingbrook police also charged Patterson with aggravated assault, unlawful use of weapons, false personation, and theft, after a complainant accused Patterson of brandishing a gun and threatening to kill him.

b.   Patterson next worked briefly for the Northern Illinois University Police Department, which counseled him for inappropriately interacting with a citizen while issuing a parking citation.

c.   Patterson then applied for employment with the HPD.  He was hired the day after he submitted his application.

d.   In 2006, Patterson failed to activate the emergency lights in an HPD vehicle, entered an intersection, and struck another vehicle. He was found to have acted incompetently.

e.   In 2010, Patterson's girlfriend filed an order of protection against him, stating that, on multiple occasions, he had assaulted her and refused to leave her home.

f.   In the same year, Patterson caused a second traffic accident while on duty in an HPD vehicle. Testing shortly after the accident revealed alcohol and an illegal substance in his blood.

g.   Also in 2010, Patterson was twice stopped on suspicion of drunk driving by the same Midlothian police officer. *See* www.chicagotribune.com/duivideo. During the first stop, the Midlothian officer issued Patterson a warning and told him to call for a ride home, but Patterson drove off anyway. During the second stop, the Midlothian officer found an open bottle of Jack Daniels whiskey in the passenger seat, as well as expired plates and improperly tinted windows, and notified HPD of the misconduct. *See id.*

h.   In November 2011, a woman reported to the Posen Police Department that Patterson had entered the women's bathroom at the Posen Pub while off duty, peered into her stall, and made inappropriate remarks to her.

i.   Between 1993 and 2010, Patterson received at least nine citations in connection with seven separate vehicle stops, in addition to the two incidents in which he damaged HPD vehicles.

40. Despite this pattern of misconduct, Defendants Kellogg, Eaves, and City of Harvey not only hired and retained Defendant Patterson but also promoted him to sergeant, investigator, and finally, Commander of the Internal Affairs Division, the HPD's highest ethics position.

## Count I -- 42 U.S.C. § 1983
## Excessive Force

41. Each Paragraph of this Complaint is incorporated herein.

42. As described above, the conduct of one or more of the Defendant Officers constituted excessive force in violation of the United States Constitution.

43. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

44. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

45. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Harvey Police Department in that:

a. As a matter of both policy and practice, the Harvey Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here

14

by failing to adequately hire, train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.   As a matter of both policy and practice, the City facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thereby leading Harvey Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Harvey Police Officers accused of excessive force can be confident that those accusations will not be investigated in earnest, and that the Harvey Police Department will refuse to recommend discipline even where the officer has engaged in excessive force;

c.   Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Harvey Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the Harvey Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d.   City policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Harvey Police Department. Police officers routinely fail to report

instances of police misconduct and lie to protect each other from punishment, and go un-disciplined for doing so; and

e.   The City of Harvey has failed to act to remedy the patterns of abuse, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

46.   As a result of the Defendant Officers' unjustified and excessive use of force and the City's policy and practice, Plaintiff has suffered injuries, including physical injury and mental distress.

### Count II -- 42 U.S.C. § 1983
### False Arrest/Unlawful Detention

47.   Each Paragraph of this Complaint is incorporated herein.

48.   As described more fully above, one or more of the Defendant Officers unlawfully detained and falsely arrested Plaintiff without justification and without probable cause.

49.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

50.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

51.   The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant

16

City of Harvey, such that Defendant City of Harvey is also liable, as described in Paragraph 40.

52. As a result of the unjustified violation of Plaintiff's rights by the Defendant Officers, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including physical pain and mental distress.

### Count III -- 42 U.S.C. § 1983
### Unlawful Search and Seizure

53. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

54. As described in the preceding paragraphs, one or more of the Defendant Officers violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure by seizing Plaintiff without justification and without probable cause and by conducting illegal searches of his body.

55. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

56. The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Harvey, such that Defendant City of Harvey is also liable, as described in Paragraph 40.

57.  As a result of unjustified and unreasonable conduct of the Defendant Officers and the City of Harvey, Plaintiff has suffered injuries, including physical injury and mental distress.

### Count IV -- 42 U.S.C. § 1983
### Failure to Intervene

58.  Each Paragraph of this Complaint is incorporated herein.

59.  As described more fully above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiff's constitutional rights as set forth above, but failed to do so.

60.  The Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

61.  As a result of the Defendant Officers' failure to intervene, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injuries, including physical injury and mental distress.

### Count V -- 42 U.S.C. § 1983
### Denial of Medical Attention

62.  Each Paragraph of this Complaint is incorporated herein.

63.  As described more fully above, while Plaintiff was falsely imprisoned by Defendant Officers, he was denied necessary medical attention.

64.  The conduct of the Defendant Officers was objectively unreasonable and they were deliberately indifferent to Plaintiff's objectively serious medical needs.

65.  As a result of the Defendant Officers' objectively unreasonable conduct and deliberate indifference to his necessary medical needs, Plaintiff suffered damages, including but not limited to physical injury and mental distress.

### Count VI -- 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

66.  Each Paragraph of this Complaint is incorporated herein.

67.  As described more fully above, there was an agreement between the Defendant Officers and other unknown co-conspirators to deprive Plaintiff of his constitutional rights.

68.  Specifically, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

69.  The conspiring Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

70.  As a result of the Defendant Officers' conspiracy, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count VI -- State Law Claim
### Assault and Battery

71.  Each Paragraph of this Complaint is incorporated herein.

72.  As described in the preceding paragraphs, the conduct of one or more Defendant Officers, acting under color of law and within the scope of his employment, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing Plaintiff's bodily injuries.

73.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

74.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

75.  As a result of the offensive touching, undertaken pursuant to the City's policy and practice as described above,

Plaintiff sustained bodily and other injuries, including but not limited to a reasonable apprehension of great bodily harm.

### Count VII- State Law Claim
### Malicious Prosecution

76. Each Paragraph of this Complaint is incorporated herein.

77. As described more fully above, one or more of the Defendant Officers commenced, caused to be commenced, and/or continued a criminal proceeding against Plaintiff for which Defendants knew there was no probable cause, and the criminal proceeding terminated in Plaintiff's favor in a manner indicative of innocence.

78. The Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

79. As a result of the Defendant Officers' malicious prosecution, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

### Count VIII -- State Law Claim
### False Imprisonment

80. Each Paragraph of this Complaint is incorporated herein.

81. Plaintiff was imprisoned by one or more Defendant Officers, and thereby had his liberty to move about unlawfully

restrained, despite the Defendant Officers' knowledge that there was no probable cause for doing so.

82.   The actions of the Defendant Officers were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

83.   As a result of this wrongful infringement of Plaintiff's rights, undertaken pursuant to the City's policy and practice as described above, Plaintiff has suffered injury, including emotional distress.

## Count IX -- State Law Claim
### Respondeat Superior

84.   Each Paragraph of this Complaint is incorporated herein.

85.   In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Harvey Police Department acting at all relevant times within the scope of their employment.

86.   Defendant City of Harvey is liable as principal for all torts committed by its agents.

## Count X -- State Law Claim
### Indemnification

87.   Each Paragraph of this Complaint is incorporated herein.

88.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for

which employees are liable within the scope of their employment activities.

89.   The Defendant Officers are or were employees of the Harvey Police Department who acted within the scope of their employment in committing the misconduct described above.

WHEREFORE, Plaintiff Sandreano Green respectfully requests that this Court enter judgment in his favor and against Defendants City of Harvey and the Defendant Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Sandreano Green hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.


Dated: April 25, 2014          RESPECTFULLY SUBMITTED,


                               /s/ Ruth Z. Brown
                               Attorneys for Plaintiff

                               Arthur Loevy
                               Jon Loevy
                               Russell Ainsworth
                               Ruth Z. Brown
                               LOEVY & LOEVY
                               312 North May St., Suite 100
                               Chicago, IL 60607